UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| OJI KONATA MARKHAM,<br><br>Plaintiffs,<br><br>v.<br><br>A. TOLBERT, et. al.<br><br>Defendants. | Case No.: 0:22-CV-00187 SRN/DLM<br><br><br>**MEMORANDUM, OPINION AND ORDER** |

William L French, William L. French, Attorney at Law, 627 Woodhaven Court N.E., Rochester, MN 55906-632, for Plaintiff

Jason M Hiveley and Julia Kelly, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion for Summary Judgment [Doc. No. 65] filed by all Defendants, seeking dismissal of Plaintiff Oji Konata Markham's ("Markham" or "Plaintiff") Complaint [Doc. No. 1]. Based on a review of the files, submissions, and proceedings herein, and for the reasons stated below, the Court **GRANTS** Defendants' Motion for Summary Judgment in its entirety.

I.      BACKGROUND

This case concerns Plaintiff's arrest on January 22, 2016, in Brooklyn Park, Minnesota, on suspicion of domestic assault and criminal property damage. Plaintiff was arrested at his residence—a rented room in his landlord's basement—in Brooklyn Park by

officers of the city's police department ("BPPD"). Plaintiff alleges that the arrest was unlawful and in violation of his rights under the Fourth and Fourteenth Amendments.

### A.     Factual Background

In the early morning hours of January 22, 2016, Plaintiff was allegedly involved in a violent incident at his former girlfriend Oxana Harris' home in Mendota Heights, Minnesota. *See State v. Markham*, A16 1548, 2017 WL 3974466, at *1-2 (Minn. App. Sept. 11, 2017), *review denied* (Minn. Nov. 28, 2017). This incident resulted in a call to police. Defendant Mendota Heights Police Department ("MHPD") Officer Stephen Hilyar responded to the call, and subsequently issued an alert to other police departments concerning Plaintiff, including his address and vehicle. (*See id.*; *see also* Hilyar Decl. [Doc. No. 69], Ex. 1 (the "MHPD Report") at 11-14.) The alert advised that Plaintiff was suspected of domestic assault and criminal property damage and the MHPD wanted his address checked and Plaintiff held if located. *See Markham*, 2017 WL 3974466, at *1-2.

At approximately 11:45 A.M., Defendants, BPPD Officers Chad Glirbas ("Glirbas") and Andrew Tolbert ("Tolbert") attempted to execute a probable cause arrest of Plaintiff at his home in Brooklyn Park (the "Residence"). (Tolbert Decl. [Doc. No. 70], Ex. 1 (the "BPPD Report") at 6.) Plaintiff's landlady, Dianne Kaldun, informed the officers that Plaintiff was not home but that he was expected home at around 4:00 P.M. (*Id.*) Tolbert returned at around 4:40 P.M., and after seeing a vehicle that appeared to be Plaintiff's car in the driveway, requested assistance from fellow BPPD officers and Defendants Ben Miller and Michael Wrobel (together with Tolbert, the "Arresting Officers"). (*Id.*)

2

At approximately 4:48 P.M., the Arresting Officers approached the Residence and knocked on the door. (*See id.*; *see also* Tolbert Decl., Ex. 2: Wrobel Squad Video) 16:54:11-16:54:57.) Ms. Kaldun answered the door. When asked whether Plaintiff was there, Ms. Kaldun answered that "that's his vehicle, I guess he must be here." (*Id.*) Ms. Kaldun then stated that "you can go down" into the basement of the residence, where Plaintiff lived. (*Id.*) Plaintiff alleges that the Arresting Officers entered the building before being told they could enter, while Defendants allege that they entered after being told they could do so by Ms. Kaldun.

One of the Arresting Officers asked Ms. Kaldun whether Plaintiff pays rent to live in the basement, and Ms. Kaldun identified his rented room for the officers. (Wrobel Squad Video 16:54:57-55:57; *see also* Tolbert Decl., Ex. 2: Tolbert Squad Video 16:59:40-17:00:26.) The officer then asked Ms. Kaldun whether she would "grab" Plaintiff. (*Id.*) Ms. Kaldun then knocked on Plaintiff's room door, informing him that someone was there to see him, that they were the police, and that she had not called them. (*Id.*)

Plaintiff then spoke with the Arresting Officers. He denied that anything had happened, and when he was asked to "come up here," he replied, "Alright, let me put some shoes on[.]" (Tolbert Squad Video 17:00:26-45.) Plaintiff then ceased speaking with the officers, spoke with someone on the telephone, and returned to speaking with the Arresting Officers. (*Id.* 17:00:45-17:03:03.) Defendants allege that Plaintiff exited his room to speak with them, while Plaintiff alleges that he only poked his head out of his room.

Officer Tolbert explained that they were there on behalf of the MHPD due to the incident earlier that morning, and inquired about what happened. Plaintiff denied that

3

anything had happened or that he had been in Mendota Heights. (*Id.* 17:03:03-27.) Officer Tolbert then told Plaintiff that he was under arrest for domestic assault. (*Id.* 17:03:27-36.) Defendants allege that Plaintiff then made a movement towards his room, which Officer Tolbert responded to by stating "don't go back in there." Plaintiff alleges that the Arresting Officers forcibly removed him from his room while he was still inside. Plaintiff was then placed under arrest and in handcuffs. (*Id* 17:03:36-17:04:45.) The Arresting Officers asked if he needed anything from his room and that they would get it if so; asked if he needed to make a phone call to his workplace; refused to allow Plaintiff to move his vehicle before leaving; and removed Plaintiff from the Residence and placed him in a squad car. (*Id*. 17:04:45-17:07:54.)

## B. Procedural History

On June 27, 2016, in a separate criminal proceeding, a jury found Plaintiff guilty of first-degree burglary with assault against Harris, and Plaintiff was sentenced to 111 months in prison. *State v. Markham*, 2017 WL 3974466, at *2. Plaintiff appealed his conviction, but the Minnesota Court of Appeals affirmed. (*Id.* at *7.) On July 11 and 18, and August 8, 2018, Plaintiff filed Petitions for Post-Conviction Relief and Amendments to the Petition arguing he was entitled to post-conviction relief on two grounds: (1) ineffective assistance of his trial counsel for failing to challenge the probable cause for his arrest; and (2) newly discovered evidence in the form of BPPD reports that Plaintiff argued indicated that there was no probable cause for his arrest. The court found that Plaintiff's claims were barred, and the Minnesota Court of Appeals affirmed. *See State v. Markham*, A18-1831, 2019 WL 3293797 (Minn. App. Jul. 22, 2019).

4

In December 2019, Plaintiff filed a petition for a writ of habeas corpus, which was denied as procedurally barred as well as on the merits. *See Markham v. Janssen*, No. 19 cv 03110 (WMW/ BRT), 2021 WL 638203 (D. Minn. Feb. 18, 2021), *aff'd* No. 21-1669, WL 8202498 (8th Cir. Oct. 22, 2021), *cert. denied* 142 S. Ct. 2881 (2022).

Plaintiff filed the Complaint in this case on January 24, 2022, bringing suit under 42 U.S.C. § 1983 against eight specific police officers (A. Tolbert, B. Miller, C. Glirbas, S. Hilyar, M. Shepard, Denise Urmann, Rawlings, and an unnamed officer numbered 193, or "Officer 193"), three prosecutors (Jennifer S. Bovitz, Dain Olson, and Heather D. Pipenhagen), Detective Ryan Olson, Plaintiff's trial and appellate counsel (Catherine Turner and Sara L. Martin, respectively), Dakota County Judges Richelle M. Wahi and David L. Knutson, Oxana Harris, Diana Kaldun, and the BPPD, MHPD, and Dakota County Judicial Center.[1]

On March 7, 2022, Magistrate Judge Becky R. Thorson issued a Report and Recommendation [Doc. No. 5] (the "R&R") recommending the dismissal of all of Plaintiff's claims except for the allegation that his arrest was carried out in a manner inconsistent with the Fourth Amendment, and concomitantly dismissing all defendants except for Tolbert, Miller, Glirbas, Hilyar, Shepard, and Officer 193. Plaintiff objected to the R&R, while Defendants did not [Doc. No. 9]. The R&R was adopted by this Court on December 20, 2022, over Plaintiff's objections [Doc. No. 17].

---

[1] While Plaintiff has been represented by counsel since June 29, 2023 [Doc. No. 56], the Complaint was made *pro se*.

Defendants Tolbert, Miller, Glirbas, Hilyar, and Shepherd answered the Complaint on January 19, 2023 [Doc. No. 19]. Officer 193, identifying himself as Michael Wrobel, answered on April 10, 2023 [Doc. No. 34]. All defendants moved for summary judgment on October 3, 2023 [Doc. No. 65]. The Court held oral argument on December 6, 2023.

## II.  DISCUSSION

In his briefing, Plaintiff claims two distinct constitutional violations by the Arresting Officers. First, Plaintiff argues that the Arresting Officers' entry into the shared space of Ms. Kaldun's home occurred without a warrant, was not justified by exigent circumstances, and occurred without genuine consent by Ms. Kaldun or himself. Second, Plaintiff argues that the Arresting Officers entered his private rented space within Ms. Kaldun's home in order to arrest him and used force to remove him from his room, which occurred without a warrant or consent and was not justified by exigent circumstances.

As an initial matter, Plaintiff makes allegations against individuals who were not even present at the time of his arrest, and claims against them must be dismissed as a matter of law. *See White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) (holding that a plaintiff suing under Section 1983 must show each individual defendant's personal involvement in the alleged violation.) As to Plaintiff's allegations against the remaining Defendants, those allegations are not supported by sufficient evidence in the record to raise a genuine dispute of material fact for a jury to resolve, and as such Plaintiff's claims must be dismissed.

### A.  Standard of Review

A court may grant a party summary judgment if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.

Civ. P. 56(a). A party opposing summary judgment "'must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Associates v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005); *see also Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits.")

In considering a summary judgment motion, the Court must "view[] the evidence in the light most favorable to the nonmoving party," *Grinnell Mut. Reinsurance Co. v. Schwieger*, 685 F.3d 697 (8th Cir. 2012), and must not "weigh the evidence and determine the truth of the matter itself," *Nunn v. Noodles & Co.*, 674 F.3d 910, 914 (8th Cir. 2012). "In essence," the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Yet, in assessing summary judgment on a constitutional claim against government agents, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). When audio evidence does not indicate "anything like the [violation] the plaintiff alleged[,]" and the

7

only evidence supporting the plaintiff's claim is their allegations, summary judgment is appropriate. *See Smith v. City of Grand Island*, 8:19CV473, 2023 WL 361937 at *9 (D. Neb. Jan. 23, 2023) (citing *White*, 865 F.3d at 1077 (8th Cir. 2017)).

### B. Defendants Other Than The Arresting Officers

Defendants argue that Officers Glirbas, Hilyar, and Shepherd were not present for or involved in the arrest. As direct responsibility for the deprivation of rights is a necessary element of a Section 1983 claim, claims against these Defendants must be dismissed.

To prevail in a Section 1983 claim, a plaintiff must introduce evidence as to each individual defendant's personal involvement in the alleged violation. *White*, 865 F.3d at 1081. Section 1983 "requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). When the record demonstrates that a defendant "was not present at, did not participate in, or otherwise have any role in Plaintiff's [allegedly unconstitutional] arrest[,]" there is no causal link between that defendant and the alleged constitutional violations, and therefore the plaintiff's claim against them should be dismissed. *See Phillips v. Pike*, Case No. 3:20-CV-05015-MDH, 2021 WL 4075557 at *3 (W.D. Mo. Sept. 7, 2021).

Here, Plaintiff does not allege that Hilyar or Shepherd were present at his arrest on January 22, 2016. Rather, Plaintiff alleges that Hilyar "coordinat[ed] the arrest efforts from headquarters by radio and telephone" but did not seek out an arrest warrant, and alleges that Shepherd transferred him from one county to another after he had been arrested. (Compl. at 9-11.) While Plaintiff alleges that Glirbas "violated the warrantless entry of [Plaintiff's residence]" by "assisting Officer [] Tolbert" in the arrest (Compl. at 8), Plaintiff

8

does not specifically allege that Glirbas was present during his arrest. The Brooklyn Park Police Department Detail report describing the arrest provides that only Officers Tolbert, Miller, and Wrobel were present at the arrest, and not Officer Glirbas. (Tolbert Decl., Ex. 1 at 5.) Plaintiff does not challenge the accuracy of this evidence.

As there is no evidence in the record supporting any causal link between these defendants and the alleged constitutional violations during Plaintiff's arrest, there is no genuine dispute of material fact for a jury to resolve. As such, all claims against them must be dismissed.

### C. Arresting Officers' Entry Into The Residence

Plaintiff argues that the Arresting Officers did not have permission to enter the Residence and did so anyway. (Pl.'s Br. at 3-4 (the Arresting Officers "deliberately concealed their real purpose from both Kaldun and Plaintiff, simply entering the premises without seeking any explicit permission to enter from Kaldun"); *see also* Markham Decl. ¶ 7 (stating that the Arresting Officers "simply knocked and entered the house without saying anything. It was only after they were inside the house that one or more of them asked whether I was home.").)

Defendants argue that the Arresting Officers had been given permission to enter the home by Ms. Kaldun, who had either actual or apparent authority to permit their entry and was not deceived or coerced into allowing the Arresting Officers into the Residence. (Def's. Br. at 14-18.)

### 1. Ms. Kaldun Had Actual Or Apparent Authority To Permit Entry Into The Residence

"A warrantless arrest is reasonable under the Fourth Amendment where it is supported by probable cause." *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).  However, the fact that probable cause exists to arrest someone inside their home does not remove the need for a warrant, except when entry is supported by (1) consent or (2) exigent circumstances.  *See United States v. Poe*, 462 F.3d 997, 999 (8th Cir. 2006); *see also United States v. Briley*, 726 F.2d 1301, 1304 (8th Cir. 1984) ("[W]e have held that a valid and voluntary consent may be followed by a warrantless in-home arrest.").  Defendants do not claim that exigent circumstances existed in this case, nor do they claim that they had a warrant.  As such, the only determination before the Court is whether there is a genuine issue of material fact in dispute as to whether the Arresting Officers had consent to enter the Residence.

While a criminal defendant can give consent to enter his own home, a third party may give consent as long as the third party had "common authority" over the premises. *See United States v. Matlock*, 415 U.S. 164, 171 (1974).  Common authority has been defined as "mutual use of the property by persons generally having joint access or control for most purposes...." *Id*. at n.7.  The third party's consent is still valid even if they do not actually have common authority so long as the police, at the time of entry, reasonably believe them to possess common authority.  *See United States v. Brokaw*, 985 F.2d 951, 953 (8th Cir. 1993) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 178-79 (1990)).

There is no genuine dispute of material fact as to whether Ms. Kaldun had actual or apparent common authority over the Residence, which she owns and lives in. During Officers Tolbert and Glirbas' first visit to the Residence on January 22, 2016, at around 11:45 A.M., they were greeted by Ms. Kaldun who advised the officers that Plaintiff was not home, but that she expected him to be home at approximately 4:00 P.M. When the Arresting Officers returned, Ms. Kaldun once again greeted them at the door of the Residence. The Arresting Officers understood that Ms. Kaldun owned the Residence and knew of the comings and goings of Mr. Markham. Those uncontested facts render the Arresting Officers' belief that she possessed common authority or apparent common authority over the Residence reasonable.

### 2. Ms. Kaldun Consented To The Arresting Officers' Entry

Whether police had consent to enter a home, and whether such consent is actually voluntary or was the product of express or implied duress or coercion, is generally a question of fact to be determined from the totality of all the circumstance. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973). While "misrepresentations about the nature of an investigation" may be evidence of coercion and can "invalidate the consent if the consent was given in reliance on the officer's deceit[,]" officers are not required to "gratuitously advertise their every move to anyone they might encounter." *United States v. Crisolis-Gonzalez*, 742 F.3d 830, 835 (8th Cir. 2014) (citing *Briley*, 726 F.2d at 1304-05).

There is no genuine dispute of material fact as to whether Ms. Kaldun consented to entry or whether her consent was coerced. Plaintiff presents no evidence other than his

11

own self-serving declaration, which is blatantly contradicted by the record. In the time-stamped audio recordings of the arrest, it is clear that the officers approach the Residence, then knock on the door, which is followed by the sound of a door opening. The following exchange then takes place:

> Ms. Kaldun: Hello?
>
> Officer: Hi, is Oji here?
>
> Ms. Kaldun: That's his vehicle, I guess he must be here. [Inaudible] I already talked to you guys.
>
> Officer: Ok.
>
> Ms. Kaldun: You can go down.
>
> Officer: He rents the basement?
>
> Ms. Kaldun: Yeah he's the room—there's a door to the right, but the one on the left is his door.
>
> Officer: You wanna just grab him? See if he'd come up and talk to me?
>
> [a pause of approximately ten seconds, followed by the sound of knocking]
>
> Ms. Kaldun: Oji? Someone's at the door for you.
>
> Plaintiff: [Inaudible]
>
> Ms. Kaldun: A policeman. You have to go talk to them.
>
> Plaintiff: [Inaudible]
>
> Ms. Kaldun: You go talk to them.
>
> Plaintiff: [Inaudible]
>
> Ms. Kaldun: I didn't call them.

(Tolbert Squad Video at 16:59:00-17:00:26; Wrobel Squad Video 16:54:30-55:53)

The Arresting Officers knock on the door, which audibly opens. After a brief conversation, in which the officers reveal that they are looking for Plaintiff, Ms. Kaldun expressly gives the Arresting Officers permission to "go down" into the basement of the Residence. There is no sound of struggle or any evidence that the Arresting Officers pushed past Ms. Kaldun or otherwise entered the Residence prior to obtaining permission from her.

There is also no evidence that the Arresting Officers deceived Ms. Kaldun to gain admission to the Residence. The Arresting Officers asked to speak with Plaintiff, having already visited the Residence earlier that day looking for him. The fact that the officers did not state their intent to arrest Plaintiff does not render their request a deceitful misrepresentation. *See Briley*, 726 F.2d at 1304-05 (holding that "officers' cryptic statement that they had important matters to discuss with the [defendant]" was not misrepresentation).[2] There is no genuine issue of material fact in dispute as to whether the Arresting Officers had consent to enter the Residence.

### D. Alleged Seizure Of Plaintiff

Plaintiff further argues that one of the Arresting Officers violated his constitutional rights by forcibly seizing and removing him from his private room without his consent to enter. He argues that he did not ever fully leave his room, he did not give consent to enter

---

[2] For the same reasons, Plaintiff's allegation that he was deceived into speaking with the Arresting Officers is unsupported as a matter of law.

13

his room, and that consent could not be given by Ms. Kaldun.  (Pl.'s Br. at 5; *see also* Markham Decl. ¶ 8.)

Defendants first argue that as Plaintiff had the full opportunity to seek discovery but has never identified the specific officer who allegedly seized him from his room without consent, Plaintiff's claim cannot proceed, as such specificity is required to maintain a claim under Section 1983.  (Def.'s Reply Br. at 2-3.)  To Plaintiff's substantive constitutional claim, Defendants argue that the Arresting Officers did not commit a constitutional violation, as the Arresting Officers did not seize him from his room using force, but rather spoke with him outside of his room and only prevented him from returning to his room after he had already been placed under arrest.  (*Id*. at 3.)

Qualified immunity shields government officials from suit, not just from liability. *Faulk v. City of St. Louis*, 30 F.4th 739, 744 (8th Cir. 2022) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed."  *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006).  Where a plaintiff has had ample opportunity to engage in discovery and determine the identities of the officers who engaged in the specific actions constituting a constitutional tort, but they have been unable to determine the officers' identities, the suit must be dismissed. *Green v. City of Saint Louis*, 52 F.4th 734, 740 (8th Cir. 2022) (reversing the district court and holding, on a motion to dismiss, that where the defendant city neither confirmed nor denied whether eight individual defendants were on a police vehicle when it tear-gassed protestors, and the plaintiff had had 14 months of discovery, that the claims against the eight defendants should be dismissed).

Neither the complaint nor Plaintiff's declaration identify which of the Arresting Officers allegedly pulled him from his bedroom. Rather, all that Plaintiff says about this alleged constitutional violation is that "[u]ltimately, one or more of the officers named above pushed the door in, grabbed me, and pulled me out of my room. It was at that point that they arrested me. Tolbert put handcuffs on me." (Markham Decl. ¶ 8.) Plaintiff has had ample opportunity to engage in discovery, both before and after he secured counsel. His failure to identify the officer responsible is a fatal defect to his claim, and leaves no question of material fact in dispute.[3]

### III.   ORDER

Based on a review of the files, submissions, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 65] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: February 7, 2024                             /s/ *Susan Richard Nelson*
                                                                  SUSAN RICHARD NELSON
                                                                  United States District Judge

---

[3] As Plaintiff's claim cannot proceed, the Court need not reach the constitutionality of the Arresting Officers' alleged conduct.